0-9-35-98, Corker J. Kasper versus O-1-3-4, W. Edges. For the epilogue. Michael J. Kasper, K-A-S-P-E-R. Courtney Nottage, N-O-T-T-A-G-E, on behalf of the petitioner. Burton S. Odleson, on behalf of the candidate, Mr. Rauschenberger. Felicia Alfresco, on behalf of the candidate as well. Okay. Mr. Nottage, who do you represent? The petitioner, the epilogue. Okay, so you're together, right? Correct. Now, have you decided that we allow generally 15 minutes? It seems to me that's a fairly straightforward issue, although we can have great combat on it. Each side is about 15 minutes. I'd suggest to Epilante that you save a couple of minutes for rebuttal, but we don't look at our watches. So if it goes into half an hour, trust me, as long as it's something interesting, that won't be a problem. I'll do my best to keep the rebuttal brief. That'd be appreciated. If, at the end of this, at the end of this argument, we're going to take a five-minute recess, and we go back and talk about this case, the three of us, we're going to then come out with a short written order, either affirming or reversing. When we do that, well, you'll see what happens when we do that. So don't go anywhere, all right? We'll rule from the bench in a written order when we're done. So stay here after we're done with the arguments. Okay? Good morning, Your Honors. As I said, Michael Kasper, K-A-S-P-E-R, and Courtney Nottage on behalf of the Epilante. This case presents the issue of the meaning of the phrase qualified primary voter for purposes of becoming a candidate for the Illinois General Assembly. Section 8-8 of the Election Code contains a clause that requires a candidate for the Illinois General Assembly to execute a statement of candidacy that claims that he or she is a, quote, qualified primary voter, close quote, of the applicable political party. This case presents the question of what is the meaning of that phrase. Who's Mr. Hossfeld? Mr. Hossfeld is a registered voter who lives in the appropriate legislative district who brought a challenge to Mr. Rauschenberger's qualifications. He has not filed himself to run against Mr. Rauschenberger as a Republican candidate? No, he's not a candidate. Not a candidate? Under the Election Code, in Section 10-8 of the Code. Well, I'm not questioning his standing. I'm just wondering who he is. Yeah. He's just an interested voter. Okay. Okay. And who's aware of the state of the law and brought this challenge based upon. A concerned citizen. Correct. Correct, Your Honor. So the phrase qualified primary voter is susceptible to three different interpretations. First, it looks forward, whether or not you're eligible to vote in the next primary election. However, since Cusper v. Ponticus invalidated the 23-month rule, which restricted party changing by voters, every voter is eligible to vote for whatever party they want to in the next election. So it doesn't look forward. The next possible interpretation is it doesn't mean anything. And it just is a synonym for person. That I don't think is the appropriate interpretation either. The third interpretation is that it looks backward. Whether or not you're a qualified primary voter of your party is dependent on your most recent voting behavior. In fact, Mr. Olson and I agree that that is the appropriate interpretation. Where we differ is the scope of that look-back. Now, the reason we know Mr. Olson agrees with the look-back provision is that two years ago he went out to DuPage County and he got the Second District Appellate Court to establish this rule in the case that we rely on primarily in our papers. That is the Cullerton case. In 2008, the Democrats nominated Mr. Cullerton as their candidate in the general election for the same office that Mr. Rauschenberger now seeks, albeit from a different district. Mr. Cullerton had voted as a Republican in the 2008 primary election. Mr. Olson brought a challenge exactly like the one that we bring today, challenging Mr. Cullerton's eligibility to be a candidate in the 2008 general election. The appellate court ruled that Cullerton was ineligible to be a candidate because he had voted as a Republican in, quote, the most recent primary preceding the filing of the statement of candidacy, close quote. The most recent primary election he had voted as a Republican. Therefore, he was ineligible to become a Democratic candidate in the general election. In the general election, right? He did not run in the Democratic primary in 2008, Mr. Cullerton. Rather, he voted as Republican in 2008, correct? Correct. That's exactly correct. And so what the court did in Cullerton is the court locked, to use its phrase, not mine, locked Mr. Cullerton as a Republican. By voting in the 2008 primary, he became locked as a Republican. For how long? That is exactly right. That's the applicable question. How long is Cullerton locked? That's the dispositive question in this case. I think we agree with it. Assuming you agree with it, Cullerton is locked, according to the very terms of its decision, quote, until the next primary, comma, now scheduled for 2010, close quote. And this being a primary, there was a primary in this case, correct? Correct. Mr. Rochenberger voted in the consolidated 2009 Democratic primary to get his sister on. And the next primary is 2010. Correct. Exactly. Now, this is where it gets complicated. Not complicated, but there's a little wrench in that. And that is that in order to run in the 2010 primary, you have to file a statement of candidacy. That must be filed at least 92 days prior to the primary. You know, you have to get the ballots ready and things of that nature. So Mr. Rochenberger executed his statement of candidacy on October 24, 2009. Now, let's assume Mr. Cullerton wanted to do exactly the same thing. The Cullerton court locked Cullerton as a Republican until February 2, 2010, so that if he had executed a Democratic statement of candidacy on October 24, 2009, it would be invalid under the plain terms of Cullerton. Right. So Cullerton votes in the 2008 primary, and he cannot run in the 2010 primary because he's still locked. Of course, he didn't say that, but that's how you interpret it, right? Yeah. I don't think there's any other way to interpret that. Well, how about Cullerton itself? Reading, consistent with Cusper, he, Cullerton, could have switched his party allegiance in the next primary. The next primary. Right. So not 2008, he could have switched his allegiance in the next primary, 2010. But the way you read that to me is that in 2010, Mr. Cullerton could have voted, taken a Republican primary ballot in 2010, but he couldn't run as a candidate even in the Republican primary of 2010. Correct. Because that lock period, the lock on Mr. Cullerton's door is not openable until February 2, 2010, when he has a chance to take a Republican or a Democratic primary ballot. So you're saying he has to make the vote in 2010 change it there, not state his candidacy for 2010. That's exactly right. And the reason why I think that's the only fair interpretation, because a statement of candidacy doesn't change your party status. Otherwise, it would have effectively done that for Cullerton in 2008. That was the issue. Well, because it was a general election in 2008. Unlike here, this is a primary. And taking the plain language, as most people would do, of Cullerton, I'd suggest you can change it to primary. In 2008, Cullerton voted as a Republican in the primary. There being no Democratic candidate, just being out West, they just named him. Correct. But he ran. I mean, he voted as Republican. Correct. So in 2008, I'd suggest there's no way an argument could even be made that he was a Democrat in 2008. And, again, I see Cullerton differently than you do, that you can change it to primary. Otherwise, if we agree with your argument here, Rauschenberger could not run in 2010. He'd have to take a Republican ballot in 2010. He'd be allowed to. We'd let him vote because Cuthbert and the other cases say so. But then he'd have to. So the next time he could run, it would be 2012. Is that right? Yes, assuming that he doesn't find himself in the same position that Mr. Cullerton did, where there's a vacancy and a nomination. Right. Assuming that the Republican, that nobody else is running for. Right. But then, again, that's not what we want. We don't have that, and we don't, frankly, I don't know if we do or not. Yeah. Would you agree that it should have nothing to do with our case whether he's going to get named or not? We're not to guess on these things. We should hold. Your argument is that under Cullerton, Rauschenberger is locked out, using your phrase and O'Malley's phrase, Justice O'Malley's phrase, for at least three years. No, I don't agree with that. No? I think that you are locked, under the plain and unmistakable terms of Cullerton, when you vote in a primary election, you are locked, in terms of being a candidate, not a voter, until the next primary. Right. The next primary could be less than three years, and, in fact, it usually is. In fact, in Mr. Rauschenberger's area, it was about a year. It was a little bit more than a year. Because the wrinkle here is that Rauschenberger lives in an area where there is partisan consolidated election. Right. Cullerton does not. So, Mr. Cullerton was locked for two years. And I don't think there is... But I suggest he's locked for four, because in 2010, you just argued that Cullerton, even had he run, he would be prohibited from running in the 2010 primary as well. You did argue that. Yes, correct. So he's not locked for two years. Your interpretation of Cullerton is that Cullerton himself will be locked for four years. No, I didn't. That he voted as a result of his taking a Republican ballot in 2008. The next time he may run as a Democrat, file his candidacy as a Democrat, would be for the 2012 election, because in 2010, he'd have to take a Republican ballot to be allowed as a voter, and that would then permit him to file his candidacy in 2012. Would that be right? Assuming the circumstance of being appointed to fill vacancies and things, that doesn't apply. Yes, that's absolutely right. I think that's clearly what Cullerton stands for, the proposition. So while the Supreme Court struck down a 23-month waiting period, we should hold a 47- or 48-month period for candidates. Well, the 23-month was struck down for voters. Correct. And I don't think that it is a 48-month period. I think that you are free to switch your allegiance at each primary, under the clear and unmistakable terms of Cullerton. As a voter, but not as a candidate? As a voter, you're free to change at every primary. That's the only time you can declare your party affiliation, correct? But as a candidate. As a candidate, you align yourself with a party, and then you are precluded from becoming a candidate of a different party until the next primary. Right. Until the next primary election. But again, in Cullerton's case, Mr. Cullerton, it was four years. Right. And if there were no primaries to which Cullerton could have run, and it took four years, yes, that would be the term. That's absolutely right. And how do you read Cullerton? A four-year lock is actually how you read Cullerton. Yeah, I don't think that it is susceptible to any other period. Because on page 780 of the decision, it says Mr. Cullerton is locked, quote, at all times since the 2008 primary, open paren, and until the next primary, now scheduled for 2010. So that's the same thing. Maybe he could run in 2010. No. I read that he could run in 2010. Because he would have to execute a statement of candidacy in 2009. That's how you argue. You're correct. That's how you argue that Cullerton should be let red, even though I don't read that sentence the same way you do. I read that to mean that Cullerton, O'Malley's Cullerton, said he could run. I mean, Cullerton could run in the 2010 primaries of Democrat. He doesn't explicitly say that because it's not that way of saying it. Yeah, I agree. Because that's why, I suppose that's why we're here. Correct. Because he didn't specifically say that. You can argue that, well, certainly O'Malley didn't mean he could run in 2010. I think that's exactly what he meant. That's how I read that. I don't know. Well, I think if you look back to page 779 of the court's decision, the court described what the phrase qualified primary voting. First and foremost. Right. And then three sentences later he says you can change it to primary. The most recent primary determines your qualification. The most recent primary for Mr. Rauschenberger was his voting as a Democrat in 2009, the same year he tried to become a Republican candidate. He's in virtually the same position as. I would say he's not in the same position at all. As Claritin, because both activities occurred in the same calendar year. Now, the difference between the cycle business that Mr. Olson relies upon is that your behavior should be limited to 2008, determines your 2008 behavior in the general election only. But does that apply in the face of the purpose of a primary? Does it not? If you're locked in for 48 months, that's why we have primaries. The idea, the evil we're trying to fight with this suggestion, if there is such an evil, is that you shouldn't, if you're going to run in the general, you should at least, for a candidate to file to be in a general election, you should either run in a primary or at least be a member of the party for which he's filing in the general in the previous primary. The primary, I'd suggest, for that election. Mr. Claritin did not. He chose to take a Republican ballot and then later tried to file. Because that was his most recent voting behavior determined. We're arguing the same thing. Mr. Rauschenberger's most recent voting behavior, in fact, in the same calendar year, is the same. He switched parties in the same calendar year. So if Mr. Claritin's most recent voting behavior dictates whether or not he can be a candidate, we would suggest that Mr. Rauschenberger's most recent voting behavior should do the same thing, from primary to primary. That's what we believe the Claritin case stands for, that proposition. So under that scenario, we think that the board's rule is inconsistent with Claritin. The State Board of Elections, who had jurisdiction over this matter, hired a hearing examiner who agreed with us, recommended that the objection be granted. The board's general counsel agreed with that. The circuit court denied our petition for judicial review. But we think that the Claritin decision versus the board's decision, the board split along party lines, the four Democrats voting. Don't they always? Not always. No, not always. Actually, they do so less than you would think. But usually when Mr. Otterson and I are in cases, they do. I'm sure anybody who's really not a member of the guys that throw the money. I've written the most recent case on it, and the legislature purposely passed an amendment some four years ago to allow them to deadlock things because they don't want to remember. Correct. And so that's why we're here. But we think that that results in two separate rules. We think that Claritin cannot be read to permit Claritin to be a candidate in the 2010 primary because he would have had to have executed a statement of candidacy that he was qualified during the period which Justice O'Malley had locked him as a Republican. We think that Mr. Claritin is locked until the plain word of the clause of the case is until the next primary. Which is 2010. I don't know how. I do know how. The only way he can unlock himself is to go into a polling place and request a ballot of another political party. The only way he can unlock himself from being a Republican is to request a Democratic primary ballot at a primary election. That does not happen until February 2nd. So until February 2nd, he's locked. On October 24th, he would have to execute a statement of candidacy that says he's a qualified primary voter during the period in which he's still locked. That he cannot do. And for that reason, we think that Mr. Rauschenberger is in exactly the same position that Claritin is. I don't think Claritin would have been, under the plain terms of its decision, permitted to run as a candidate in the 2010 primary election. I appreciate your forthrightness. I want to save a few minutes so we'll have you come up. Sure. Thank you. Mr. Orlison or whoever. Ms. Frazier, whichever. Mr. Police and Court, first I want to thank you for granting the expedited schedule and for granting oral argument. This is a very important case. And rather than going into the facts, which the court has a very good handle of, I'll start with my last argument first. And that is one of the last quotes I did in my brief, quoting from NAACP versus Buttons and Cusper versus Bonticus. Precision of regulation must be the touchstone in an area so closely touching our most precious freedom. This is a constitutional case. This is a case involving a constitutionally protected liberty, the liberty to freely associate with the political party of your choice. This is a back-to-the-future case where we go back to Cusper versus Bonticus and Harriet Bonticus' dilemma very similar to Mr. Rauschenberger's seemingly dilemma by virtue of the objector's petition. Mr. Orlison, I read the several points you made about this being a constitutional issue. And what case have the courts held that restrictions on the candidates is unconstitutional? Spurling. Where does that say that in Spurling? Spurling and Dooley. On candidates. On candidates. In the Spurling case, and I would refer you to page 19 of my brief at the bottom where I talk about the Spurling Court's decision in a long quote, but if you go to the last sentence of the quote on the top of page 20, the Supreme Court said, in these circumstances, the restrictions upon candidates cannot be considered independent and severable from the invalid portions of the plan. The plan being the 7-43D lockout provisions. After Spurling, two years later, the Supreme Court visited this section again in Dooley v. McGillicuddy, and the next quote, the next quote on page 20, specifically the last sentence says, the result in Cusper and Spurling in the absence of curative legislation, which is very important in this case, was to render inoperable those restrictions upon candidates in party primary and voters who signed nominee petitions concerning those individuals' prior political affiliation. Mr. Olson, doesn't Spurling also say specifically, we believe that the standards governing party changes by candidates may and should be more restrictive than those relating to voters generally? Yes, it does. That's in Spurling also. That is in Spurling. And Spurling said, Spurling and Dooley said, you can't put restrictions on candidates, but who can put the restrictions on candidates? The General Assembly. They write the laws, this Honorable Court and the Supreme Court interpret the laws. You, as a court, cannot judicially write the laws. Spurling said that. That is the law. And, in fact, though it's not mentioned in either of our briefs, this Court is probably aware because you have had election cases before, in New York, in Rosario v. Rockefeller, they have a restriction, a constitutional acceptable restriction that you could register 30 days before the primary as a candidate of either party and a voter of either party. Since Rosario back in the 70s, which was the United States Supreme Court case, New York has changed the law again, and when you apply to vote, you check a box. Republican, Democrat, no party affiliation. So to answer your question, Madam Justice, you can and candidates may be held to a more strict standard than voters or petition centers. Especially candidates who are knowledgeable. Mr. Rauschenberger is no stranger to this situation. Mr. Rauschenberger is a well-known Republican, and then he gets to a point where, for specific reasons, he votes in a Democratic primary, votes as a Democrat, and then in the same year, he, you know, puts in his candidacy, his statement of candidacy for the next election cycle as a Republican. This is not a situation where we had some time pass by or, I mean, he voted in the same year knowing he was going to run in 2010 as a Republican. If we open the door to that, aren't we opening the door to all kinds of people flip-flopping all over the place? What Mr. Rauschenberger did, former Senator Rauschenberger did, is exercise his constitutional right to freely associate with the party of his choice at different elections. Different elections. And that's the key. Justice Quinn hit on that in his questioning of Mr. Casper. That is the focal point of our brief. That was the decision of Judge O'Brien in the lower court. That was the decision of the electoral board at the Cook County Electoral Board. The fact that we can move from party to party, from election to election. Cullerton didn't do that. He wanted two bites at the apple. He wanted to participate with both parties at the same election. That's the difference, the stark difference between the Cullerton case and this case. Mr. Cullerton voted in February of 08 as a Republican, and 58 days later,  let's take Mr. Cullerton, who just voted in the primary, and make him our candidate for the primary. So he's won the primary by the slating of the party 58 days later, and now he can run in the general election as a Democrat. So you distinguish between two months and six months? No. I distinguish between election cycle and election cycle. Call it cycle, call it period. What is the election cycle in Cullerton? The election cycle in Cullerton was confined to... Where is that term? The term is not there. Justice O'Malley did not use the term election cycle. He used the term during the election period, the election period going from February, February of 2008, to November when you voted in the general election. During that election period, primary general election, you can't have two bites at the apple. In fact, 7-44, the code still says that, that if you declare, and declare is an important word because that's what Mr. Rauschenberger did in his statement of candidacy, he declared under oath that he was a Republican for that election cycle of February 2010, November 2010. That's a different election than February 2009 when he declared as a Democrat to vote in a local township primary, and then voted in April of 2009 in that general election for township. It's election cycle to election cycle. Can the General Assembly restrict candidates? Yes. And when they do, we probably will be back here with another case interpreting whether they have constitutionally carved out some law to restrict. But isn't the problem that the 7-10, as you just referred to the code, just doesn't really help us at all? No. Not anymore? No. They took the language out, as I cited in the brief. Finally, two decades after Cusper and Sperling and Dooley, on page 21 of my brief, you see what the General Assembly did in 1990 by taking out that language, which locked someone in to a 23- or a 48-month cycle, and says a qualified primary elector of a party may not sign petitions for or be a candidate in the primary of more than one party. Well, that's Cullerton. That's what Cullerton did. He participated in the Republican primary by voting Republican, and then he was slated to be a Democrat as their candidate as an offshoot of the primary to run the general election. So the only restriction left is that restriction, which is mirrored in 7-44, which says you can't declare for one party or sign a petition for a candidate in one party and then go vote for the other party. You can't do that. But that's the only restriction. Until such time as the General Assembly acts, we are free to associate as voters, as petition signers, or as candidates from primary to primary. And that's what Justice O'Malley said. That's what Justice O'Malley meant. He's confined to the facts of that case, and that case are very narrowly tailored to what happened. And that's what Judge O'Brien said in the circuit court. I don't see anything in Cullerton. I don't see anything in any other case that leads me to the conclusion that Justice O'Malley meant you have a lockout period where you have to miss a primary. Just think about this. We both agree. Both sides agree. You can sign a petition. Excuse me, Mr. Alderson, when you say you have to miss a primary, nobody is saying he can't vote as a Republican in the next primary. That's right. You took my next sentence. He can vote. But what we're saying here, or what Mr. Casper is saying, is you can sign a petition and you can vote, but you can't be a candidate. Well, it's going back to the United States Supreme Court in Cusper v. Panticus and Sperling and Dooley. And the language from Dooley and Sperling is very specific and on point. And, again, I would point you to page 20 of my brief in the quote from Dooley v. McGillicuddy. It is clear. It is the mandate of our Supreme Court, the second district. Even if you take Mr. Casper's interpretation of what Justice O'Malley was saying is true, they cannot overrule the Illinois Supreme Court, which has told us until the General Assembly rewrites the law or gives us something new, people are free to associate from election to election as a Republican, a Democrat, an independent. Therefore, we're asking that you affirm the decision of the Circuit Court, which denied the petition for judicial review, and allow Mr. Rauschenberger to remain on the ballot as a candidate of the Republican Party for state senator. And, by the way, because of early voting and absentee voting, ballots have gone out, voting has taken place. Mr. Rauschenberger himself has already voted early absentee as a Republican, which is the only party he could vote for this time because he declared himself in his October 2009 statement of candidacy. Does he have opposition? No. So if he's off the ballot, there's nobody on the ballot. No. Thank you. Mr. Casper. Thank you, Your Honors. Very briefly, I didn't get to this discussion of Sperling that Mr. Olson got to. Go ahead. I want to just a little bit briefly about that. Go ahead. On page 21 of his brief, he copies from the Cullerton decision, the amendment that Justice Coleman, you were discussing. In Sperling, the Court ruled that there was a sentence in Section 710 that tied petition signers and candidates to the 43-month rule. The Court specifically said that that restriction on petition signers is invalid. The legislature responded to that by repealing that sentence so that the restriction on party, on petition signers, no longer exists. But what the legislature did not do is repeal the corresponding section regarding the statement of candidacy, where it says qualified primary voter. So the Court in Sperling said, when petition signers and candidates are in the same sentence, they cannot be severed. So the legislature responded by repealing the unseverable sentence. But it left intact the sole sentence, the individual sentence, for candidates. And the Court did say that restrictions on candidates are, in fact, more susceptible to lengthier periods for obvious reasons that the Cullerton Court talks about. And, you know, this isn't our argument. This is the decision of the Cullerton case. The Cullerton case considered all of these arguments that were made regarding Cosper, regarding Sperling, and it rejected those. It's a Second District case, too, though. That's true. And as they point out, just kind of a comic aside, it was written by Jack O'Malley, who, lifelong Democrat, never, he wouldn't know Republican ballot if it hit him in the head. Then he ran for State's Attorney as a Republican. That's correct. And so I want to conclude by going back and take one more run at you, Justice Quinn, regarding this sentence. Come on. Justice O'Malley, when he said that Cullerton was locked at all times since the 2008 primary and until the next primary, now scheduled for 2010, your interpretation that we were talking about before says that he is not locked until the next primary, that he is locked until the filing period for the next primary, which is in October of 2009. So that it's not now scheduled for 2010, it would be 2009. If Jack O'Malley wished to say that Cullerton could not run as a Democrat in the 2010 primary, I think Jack would have said so. He did not say so. Now, again, it could just be because it's badly written. And clearly it is badly written, since we're arguing about this, that had he clearly said, had Jack O'Malley, had the Cullerton opinion said, and he can't run, while Cullerton can put it in English that you and I agree on, Cullerton can run, can vote as a voter and take a Democratic ballot in 2010. But he may not run as a candidate in 2010, in the 2010 Democratic primary. He could have said that. Had he said that, then we would be at loggerheads over Cullerton. Then my fallback position would have to be, Mr. Kasper, that I don't have to follow, we don't have to follow a second district case. But I think we can say, we can follow Cullerton and say what I think it says, which is, you know, he can run, Cullerton could run in the Democratic primary as a candidate in 2010. Otherwise it's four years delay. And I don't, you know, it makes a lot of sense to have delay. I support Sperling. I read Sperling the way you read Sperling. I read Sperling the way that Mr. Olson read Sperling when he was representing DuPage County back in the Cullerton case. But it does say there are restrictions on candidates. But I don't think it's four years. I think it's from primary to primary. And we're not suggesting it's four years either. We're suggesting it's from primary to primary. In this case, it's less than a year. It would be three. No. He can vote in 2010, right? So the next time he can run then is 2012. 2011 in the next municipal. If he wants to be a mayor, I guess, or a dog catcher as opposed to what he has been for years, a state senator. Or, as we've seen a lot lately, there's been two special congressional elections. He's free to run in those. So it's from primary to primary. Where is anybody to tell Rauschenberger or any other candidate, though, Mr. Kessler? And that's the bottom line in all these election cases, is that the government should not be telling candidates what they can run for. Again, sometimes we have to. But generally, it's a very bad idea. It's kind of anathema to being an American. You know, you get to pick. The parties don't get to pick. The people get to pick. Right. And the legislature sits forth only one real criteria, and that is that you be a qualified primary voter of your party. And according to Cullerton, that looks back at your most recent voting behavior. Mr. Rauschenberger's most recent voting behavior was that of a Democrat. For that reason, we think it is the same as Cullerton. We think the board's decision should be reversed and that the rules that apply in the 2nd District ought to apply in the rest of the state as well. Candidates running for the General Assembly and the political parties that recruit those candidates ought to play by the same rules. We think that the rules are different. That in the 2nd District, the universe of candidates that can be selected is limited by Cullerton. Thus far, in Cook County and in the rest of the state, it's not so limited, and we think that that should not be the rule, that the rules governing candidates for the General Assembly ought to be the same. For that reason, we ask that the decision be reversed. And so your position would be that, and it is, I'm sure, is that not only then can Rauschenberger not run in the primary of 2010 since he's running unopposed, the Republicans could also not appoint him then, choose him. Sure he could. If he votes in the Republican primary, then he's realigned himself. Okay. That's why I bring this up. So if he votes, if we agree with you, and he's removed from the ballot, and he takes the Republican primary ballot anyhow because he's a loyal guy, your position is that since nobody is running in the Republican primary anymore in February of 2010, the Republican Party, which holds the 22nd District of the State Senate, could just name Mr. Rauschenberger as their candidate for the November 2010 election. Absolutely. Okay. Absolutely. And the reason for that is that he has an opportunity to realign himself as a Republican at the next primary. Okay. Absolutely. That's why we have oral arguments. Thank you both sides for the briefs. Stay here and we'll be on in a few minutes.